IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PHILIP CARRILLO<br>   *Plaintiff*,<br><br>v.<br><br>CRESCENT PAYROLL SOLUTIONS, INC., CRESCENT PAYROLL SOLUTIONS LLC, SANDERS OFFNER, and JUSTIN FARRAE,<br><br>   *Defendants*. | § § § § § § § § § § § § § | NO. _____<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff Philip Carrillo ("Plaintiff") bringing the causes of action listed herein against Crescent Payroll Solutions, Inc. and Crescent Payroll Solutions LLC (collectively, "Crescent") as well as Sanders Offner and Justin Farrae.

### I. NATURE OF THE CASE

1. Philip Carillo, a former employee of Crescent Payroll Solutions, brings this case.

2. When Crescent promoted Philip to HR Director in 2022, it entered into a profit and revenue sharing agreement with him.

3. Also parties to that agreement were Sanders Offner (Crescent's owner) and Justin Farrae (Crescent's Vice President), who personally guaranteed the profit and revenue sharing terms.

4. But instead of following through on their promises, Crescent, Offner, and Farrae, refused to pay Philip any of the promised profits and revenues, and instead fired him.

5. Philip brings suit for damages and to void Crescent's illegal non-compete terms.

## II. PARTIES

6. **Phillip Carrillo** is an individual who is a resident and domiciliary of the State of Texas and who worked within the jurisdiction of this court for a significant portion of time relevant to his claims.

7. Defendant **Crescent Payroll Solutions, Inc.** is a Louisiana-based for-profit corporation that may be served through its registered agent, Sanders Offner, located at 2450 Severn Ave, Ste 300, Metairie, Louisiana 70001.

8. Defendant Crescent Payroll Solutions, Inc. has its principal place of business in Louisiana.

9. Defendant Crescent Payroll Solutions, Inc. has a domicile of Louisiana.

10. Defendant Crescent Payroll Solutions, Inc. was incorporated in Louisiana.

11. Defendant **Crescent Payroll Solutions LLC** is a Louisiana-based for-profit corporation that may be served through its registered agent, Sanders Offner, located at 2450 Severn Ave, Ste 300, Metairie, Louisiana 70001.

12. Defendant Crescent Payroll Solutions, LLC has its principal place of business in Louisiana.

13. Defendant Crescent Payroll Solutions, LLC has a domicile of Louisiana.

14. Defendant Crescent Payroll Solutions, LLC was incorporated in Delaware.

15. Defendant **Sanders Offner** is an individual who is a resident and domiciliary of the State of Louisiana.

16. Mr. Offner was a party to the November 17, 2022 compensation agreement with Philip Carrillo.

17. Defendant **Justin Farrae** is an individual who is a resident and domiciliary of the State of Louisiana.

18. Mr. Farrae was a party to the November 17, 2022 compensation agreement with Philip Carrillo.

### III.   JURISDICTION AND VENUE

19. The Court has subject matter jurisdiction over this case under diversity jurisdiction per 28 U.S.C. § 1332.

20. This matter is between citizens of different states because the plaintiff is not a citizen of the same state as any defendant.

21. The amount in controversy here exceeds $75,000.

22. Venue is proper in this district court under 28 U.S.C. §1391 because a substantial part of the events or omission giving rise to Plaintiff's cause of action occurred in the Eastern District of Louisiana.

### IV.   STATEMENT OF FACTS

23. Plaintiff Philip Carrillo was employed by Crescent from August 4, 2020, to June 24, 2024.

24. Crescent's office is located at 2450 Severn Ave, Ste 300, Metairie, Louisiana 70001.

25. Plaintiff interviewed for the position of HR Advisor in August of 2020 with Sanders Offner, Justin Farrae, and others.

26. Sanders Offner is the owner of Crescent.

27. Justin Farrae is a Vice President of Crescent.

28. In August 2020, Plaintiff was hired for the position of HR advisor.

29. Plaintiff and Crescent signed an "Employment Agreement" that was effective on August 4, 2020.

30. The agreement was between "Philip Carrillo" and "Crescent Payroll Solutions, a Louisiana corporation."

31. The agreement did not distinguish between Crescent Payroll Solutions, Inc. and Crescent Payroll Solutions LLC.

32. The 2020 agreement was drafted by Crescent.

33. The 2020 agreement specifically provided that the agreement "shall inure to the befit of and be binding upon Company and employee and their respective successors, executors, administrators, heirs and/or assigns."

34. It is therefore binding on both Crescent Payroll Solutions, Inc. and its successor Crescent Payroll Solutions LLC.

35. Plaintiff was tasked with automating the HR department and making it more efficient.

36. Based on the results Plaintiff achieved, Plaintiff was promoted to Director of HR on about November 17, 2022.

37. This promotion came with added responsibilities, such as hiring and managing employees.

38. Plaintiff also entered into an addendum to his original employment agreement on or about November 17, 2022.

39. Under the addendum, Crescent was required to increase Plaintiff's pay to include: a) a salary increase; b) a one-time bonus; c) payment of 10% of empact HR's net profits, paid on a quarterly basis; d) payment of 10% of RPO's gross revenues, paid on a quarterly basis; and e)

5% revenue share of empact HR in the event of divestiture of recapitalization in exchange for Plaintiff's work performed for the company.

40. The addendum is repeated in full here:

## COMPENSATION AGREEMENT

This agreement made November 17, 2022, by and between Philip Carrillo, Sanders Offner, Justin Farrae, and Crescent and empact hr (a division of Crescent).

It is the desire of all parties to enter into this agreement, whereby Philip Carrillo's remuneration for services rendered is increased and Philip Carrillo is given certain other incentives.

It is agreed as follows:

1. Base wage increase to $100,000 per annum, effective November 16, December 5 check date, 2022.*
2. One-time bonus of $5000 will be paid to Philip Carrillo in December, 2022.
3. Of empact hr's net profits, starting January 1, 2023, Philip Carrillo will be paid a quarterly percentage share of 10%. Paid the 2nd check date of the following quarter.*
4. Of RPO's gross revenues, starting January 1, 2023, Philip Carrillo will be paid a quarterly percentage share of 10%. Paid the 2nd check date of the following quarter.*
5. 5% revenue share of empact hr (of the trailing 12 months at the given multiple of valuation), in the event of divestiture of recapitalization.*
6. Title change to Director of HR, effective October 17, 2022.

*All forms of remuneration end upon termination of employment. No claim on either extends past the final date of employment, and final payments for services rendered up to the date of termination.

In witness of, the parties have executed this agreement.

| Signature | Signature (Philip Carrillo) | Signature |
| --- | --- | --- |
| Printed Name: Justin Farrae | Printed Name: Philip Carrillo | Printed Name: Sanders Offner |
| Date: 11/30/22 | Date: 11/30/22 | Date: 11/30/22 |

41. This addendum has some significant differences from the original employment agreement.

42. The original employment agreement was between Plaintiff and Crescent Payroll Solutions.

43. It was signed by "Sanders Offner, President" for "Crescent Payroll Solutions."

44. The 2022 addendum, however, was between "Philip Carrillo, Sanders Offner, Justin Farrae, and Crescent and empact hr (a division of Crescent)."

45. That is to say: <u>Offner and Farrae personally made themselves parties to the 2022 addendum</u>.

46. Offner and Farrae therefore became personal guarantors of the profit and revenue sharing terms.

47. That is corroborated by the fact that the addendum says "the parties have executed this agreement" – followed by the signatures of Farrae, Carrillo, and Offner.

48. The addendum was drafted by Defendants.

49. Offner and Farrae characterized this addendum to Carrillo as an "investment."

50. In about October 2023, Plaintiff's relationship with his long-term partner came to an end.

51. After that relationship, Plaintiff wished to relocate to Houston.

52. Plaintiff discussed this with Offner, who encouraged this decision.

53. Offner explicitly told Plaintiff that he could work from Houston "anytime he needed."

54. There were no complaints from Defendant about Plaintiff's work habits until June 2024.

55. On about June 19, 2024, Plaintiff was called into a Team's video call with Offner and Defendant's Director of Administration, Jessica Johnson.

56. They told Plaintiff that they would be putting him on a 30-day performance improvement plan "PIP."

57. Their rationale was that two members of Plaintiff's team had complained about him "appearing disengaged," and "had been slow to answer emails."

58. Despite putting Plaintiff on the PIP on June 19, 2024, Defendant terminated him on June 24, 2024.

59. In terminating him, Defendant cited the same reasons used when putting Plaintiff on the PIP.

60. Defendant did not pay Plaintiff any of the profit-sharing payments listed above (subsections 3-5) of the addendum.

61. Moreover, upon information and belief, the condition precedent for the revenue share in subsection e, divestiture of recapitalization, has occurred prior to the filing of this lawsuit.

62. Plaintiff's entitlement to these sums survives the end of his employment, given that his contract provided that he "shall be entitled to receive all Salary, Bonus and Commission earned as of the effective date of such termination; *provided*, that the Employee has complied with all of his/her obligations set forth in this agreement."

63. Plaintiff "complied with all of his/her obligations set forth in this agreement."

64. As a result of Defendant's failure to perform under the contract, Plaintiff was actually damaged and did not receive any of the monies owed under the contract for which he is owed and relied upon receiving to his detriment.

## V.    CAUSES OF ACTION

**COUNT 1:    Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Abuse of Rights, Detrimental Reliance, and Tortious Interference with Contract.**

65.    Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein.

66.    Here, the parties entered into an employment agreement dated August 4, 2020.

67.    That agreement explicitly provided that Plaintiff's entitlement to his bonuses and commissions survive the end of his employment, given that his contract provided that he "shall be entitled to receive all Salary, Bonus and Commission earned as of the effective date of such termination; *provided*, that the Employee has complied with all of his/her obligations set forth in this agreement."

68.    On November 30, 2022, the parties made a written addendum to the contract that increased Plaintiff's bonuses and entitled him to a share of profits and revenues.

69.    Thus, Plaintiff and Defendants entered into a valid contract wherein Defendants had a duty to pay Plaintiff quarterly bonuses as well as a percentage of the profits in the event of a divestiture of recapitalization.

70.    Though Plaintiff performed all his duties under the contract, all conditions precedent were met, Defendants failed to pay any of the bonuses or profits owed to Plaintiff under the contract.

71.    As a result of Defendants' failure to perform under the contract, Plaintiff was actually damaged and did not receive any of the bonuses or profits owed under the contract for which he is owed and relied upon receiving to his detriment.

72. Furthermore, every contract in Louisiana carries an implied covenant of good faith and fair dealing. *Grisaffi v. Dillard Dep't Stores, Inc.*, 43 F.3d 982, 983 (5th Cir. 1995).

73. Here, Crescent breached the implied covenant of good faith and fair dealing by terminating Plaintiff in the middle of a PIP in an attempt to avoid paying him the sums due under the addendum.

74. Furthermore, Louisiana law allows a person to recover expenses incurred and damages suffered if the person reasonably relied on another's promise or representations, and the promisor knew or should have known the person would rely on the promise or representation. La. Civ. Code 1967.

75. Here, Plaintiff entered into the addendum in reliance on Defendants' characterizations of it as an "investment" and as an addendum that incorporated the terms of the prior employment agreement.

76. Furthermore, Louisiana law recognizes the doctrine of abuse of rights. For the abuse of rights doctrine to apply, one of the following conditions must exist: (1) the predominant motive for exercise of the right is to cause harm; (2) there is no serious or legitimate motive for exercise of the right; (3) the exercise of the right violates moral rules, good faith, or elementary fairness; or (4) the exercise of the right is for a purpose other than that for which it was granted. *Magner v. Deas*, 2023-0598 (La. App. 4 Cir 03/27/24), 401 So. 3d 43, 49.

77. To the extent that Crescent had a right to terminate Plaintiff but did so in an attempt to avoid paying him the sums due under the addendum, that would constitute an abuse of rights.

78. Furthermore, Louisiana law recognizes a tort for the tortious interference with contractual rights. Under that doctrine, a cause of action for tortious interference with contract

arises from a corporate officer's duty to refrain from intentionally, and without justification, interfering with the contractual relationship between his employer and a third person. *Benoist v. Jackson Nat'l Life Ins. Co.*, 2022-0878 (La. App. 1 Cir 04/14/23), 364 So. 3d 1162, 1166-67.

79. Here, Offner and Farrae are liable for tortious interference with contract to the extent that they induced Crescent to terminate Plaintiff's employment in an attempt to avoid paying him the sums due under the addendum.

### COUNT 2: UNLAWFUL NON-COMPETE AGREEMENT

80. Plaintiff repeats and re-alleges all facts alleged above with the same force and effect as though fully set forth herein.

81. The contract that Crescent drafted and asked Plaintiff to sign contained a "Covenant Not to Compete," which prohibited Plaintiff from engaging directly – or even "indirectly" – in any business competing with Defendant throughout the entire "State of Louisiana, including the Parishes of Louisiana in its entirety" for two years after his termination.

82. It also prevented him from having "a relationship" with any person that provides services competing with Defendant anywhere in Louisiana, with narrow exceptions.

83. The contract threatened Plaintiff with damages and injunctive relief should he violate the non-compete term.

84. This contract term violates Louisiana law.

85. La. R.S. 23:921 declares that all noncompetition agreements are null, unless they meet certain exceptions outlined under La. R.S. 23:921(C), which requires: (1) a two-year maximum duration, (2) a list of the areas in which the former employee is restrained, and (3) competition between the former employee and employer.

86. Louisiana courts will ordinarily "decline to save invalid non-competition provisions through reformation." *Gearhead v. De Puy Orthopaedics, Inc.*, 1999 WL 638582, at *6 (E.D. La. Aug. 19, 1999) *citing Water Processing Technologies, Inc. v. Ridgeway*, 618 So.2d 533, 536 (La. App. 4th Cir.1993) (additional citations omitted).

87. Here, Defendant's non-compete is far broader than what the law allows.

88. It does not just restrict Plaintiff from competing with them – it restricts him from having a *relationship* with anyone who competes with them.

89. Whereas the law narrowly allows non-competes that prevent solicitation of customers, Defendant's non-compete also prohibits solicitation of contractors, suppliers, and *prospective* customers.

90. Whereas the law narrowly allows non-competes covering specified parishes where an employer "carries on a like business" in that parish, Defendant's non-compete covers all 64 Louisiana parishes without regard for whether Defendant has business there.

91. Furthermore, because the agreement prevented Plaintiff from having "a relationship" with any person that provides services competing with Defendant anywhere in Louisiana, the contract is void as against public policy.

## VI.   PRAYER

For these reasons, Plaintiff prays that Defendant be cited to appear and answer herein and that this case be advanced for trial before a jury, and that on final hearing this Court grant the following relief:

a) A trial by jury;

b) Compensatory damages

c) Declaratory and injunctive relief invalidating Defendants' unlawful non-compete provision;

d) Pre-judgment interest at the highest rate allowed by law;

e) Post-judgment interest at the highest rate allowed by law; and

f) For such other and further relief to which this Court deems Plaintiff is justly entitled and/or deems proper.

Respectfully submitted,

*/s/ William Most*
William Most (La. Bar No. 36914)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, # 9685
New Orleans, LA 70170
Tel: (504) 509-5023
Email: williammost@gmail.com


Bridget Davidson*
TX Bar No.: 24096858
SDTX No.: 3005005
SPACE CITY LAW FIRM
440 Louisiana St., Ste 1110
Houston, Texas 77002
*bdavidson@spacecitylaw.com*
Tel: 713.568.5305
Fax: 713.583.1107

**Attorneys for Plaintiff**

***Pro hac vice* motion to be filed**