**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **PHILIP CARRILLO** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | |
| | * | **NO. 25-1787** |
| **CRESCENT PAYROLL SOLUTIONS, INC.** | * | |
| **ET AL.** | * | |
| | * | **SECTION: “R” (3)** |
| ***************************** | * | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


I. Undisputed Material Facts .......... 2

a. Offner offered Carrillo employment as an HR Advisor in August 2020. .......... 2

b. Carrillo requested a raise in 2022, which led to the parties entering into a Compensation Agreement. .......... 4

c. Crescent made the bonus and profit-sharing payments pursuant to the Compensation Agreement. .......... 5

d. In October 2023, Carrillo broke up with his partner and in April 2024, he moved to Houston to work on a fully remote basis, which did not work out. .......... 6

e. In May 2025, Crescent reorganized and Farrae sold his interest in the company. .......... 8

f. Carrillo contends the Compensation Agreement gave him an ownership interest in Crescent and does not mean what it says. .......... 8

II. Carrillo's Claims .......... 9

III. Law and Argument .......... 10

a. Carrillo cannot prove that Defendants breached his Employment Agreement or failed to pay him amounts owed under the Compensation Agreement. .......... 10

b. Carrillo cannot prove he changed his position to his detriment by entering the Compensation Agreement. .......... 11

c. Carrillo cannot prove Defendants abused any right by terminating his employment.. .......... 12

d. Carrillo cannot prove Farrae or Offner tortiously interfered with his Employment Agreement. .......... 13

e. There is no justiciable controversy regarding Carrillo's non-compete agreement. 14

IV. Conclusion. .......... 16

MAY IT PLEASE THE COURT:

In this employment case, Plaintiff Philip Carrillo claims he relied to his detriment on representations made by his former employer, Crescent Payroll Solutions, Inc. ("Crescent") and its President Sanders Offner and former Vice President Justin Farrae to enter into a Compensation Agreement in November 2022. Carrillo also claims Crescent, Offner, and Farrae breached his Employment Agreement by terminating his employment in June 2024 to avoid paying him amounts due under the Compensation Agreement and by not paying him bonuses and profits due under that agreement. Carrillo further contends that Defendants abused their right to terminate his employment and/or Offner and Farrae tortiously interfered with his Employment Agreement by causing Crescent to terminate his employment so they would not have to make profit-sharing payments to him pursuant to the Compensation Agreement, including any that would be owed to him in the event of a "divestiture or recapitalization" of Crescent. Finally, Carrillo claims that the non-compete provision in his Employment Agreement—which he admits Defendants have never sought to enforce against him—is unenforceable.

As the record shows, Crescent hired Carrillo in 2020 as an HR Advisor and initially paid him $60,000/year. When Carrillo requested a raise to $120,000/year in November 2022, the parties wound up entering into the Compensation Agreement instead. Pursuant to that agreement, Carrillo received a raise to $100,000/year, a job title change, a one-time $5,000 bonus, the opportunity to share in the profits for the business division he led, the opportunity to share in revenue earned for recruiting placements for Crescent's customers, and the opportunity to share in certain profits if there was a divestiture or recapitalization of Crescent while he worked for the company. Crescent paid Carrillo everything he earned under the Compensation Agreement and in June 2024, Crescent terminated Carrillo's employment after he chose to move from New

Orleans to Houston and work on a fully remote basis following a break-up with his long-time partner because the employees he supervised complained that he was unavailable and the company's investigation into his activities indicated he was not doing his job.

In May 2025, Crescent reorganized and dissolved and Crescent Payroll Solutions, LLC was formed. In the transaction, Farrae sold his ownership in Crescent. The transaction was not contemplated before Carrillo lost his job in June 2024 and no steps were taken to effectuate it before then.

As explained below, based on the undisputed facts, Defendants are entitled to judgment as a matter of law on all of Carrillo's claims because: (1) Carrillo cannot prove Defendants breached his Employment Agreement or failed to pay him any amount owed to him under the Compensation Agreement, (2) Carrillo cannot prove he changed his position to his detriment by entering into the Compensation Agreement, (3) Carrillo cannot prove Defendants abused any right by terminating his employment, (4) Carrillo cannot prove Farrae or Offner tortiously interfered with his Employment Agreement, and (5) there is no justiciable controversy related to Carrillo's non-compete agreement.

## I. Undisputed Material Facts

### a. Offner offered Carrillo employment as an HR Advisor in August 2020.

In August 2020, Carrillo was living in New Orleans, having moved to the city to live with his then-partner.[1] At that time, Crescent was looking to grow a new division around outsourced Human Resources.[2] Offner saw Carrillo's resume on LinkedIn and reached out to him to discuss

[1] Carrillo 22:19-21.
[2] Offner 17:19-24; Carrillo 28:12-20.

the opportunity.[3] Carrillo interviewed for the position and, soon after, Crescent offered him a job as an HR Advisor.[4] Carrillo understood and acknowledged that he would be employed at-will.[5]

At the time Crescent hired Carrillo, Offner was the President of the company and Farrae was a Vice President and Offner and Farrae were two of the four owners of the company.[6] Offner was chiefly responsible for sales and Farrae was chiefly responsible for finance and operations.[7]

Carrillo signed an Employment Agreement dated August 4, 2020.[8] Carrillo understood he was expected to work 40 hours/week, in-office.[9] The Employment Agreement provided that Carrillo's starting salary would be $60,000/year, would increase to $75,000/year after six months, and would increase to $90,000/year after a year upon Carrillo's successful attainment of agreed upon goals.[10] Carrillo received these pay increases, though the increase to $90,000 did not take effect in Carrillo's first paycheck after the one-year mark in August 2021, so Crescent had to make that adjustment retroactively.[11]

The Employment Agreement also contained a non-compete agreement, which Crescent has never sought to enforce.[12]

---

[3] Offner 15:13-23; Offner Int. at Resp. to Int. No. 2.
[4] Carrillo 27:7-15, 28:12-20, at Ex. 2; Farrae 28:5-18; Offner 15:13-23, 18:21-19:8; Farrae Int. at Resp. to Int. No. 2.
[5] Carrillo 46:4-21 and Ex. 3.
[6] Farrae 10:16-18; 17:11-14; 20:22-24; Farrae Int. at Resp. to Int. No. 1; Offner Int. at Resp. to Int. No. 1.
[7] Offner Int. at Resp. to Int. No. 1; Farrae 10:23-11:2, 11:12-12:3.
[8] Carrillo at Ex. 2.
[9] Carrillo 31:25-32:5.
[10] Carrillo 34:7-23 and Ex. 2; Farrae 35:9-18.
[11] The timing of the increase to $90,000/year in Carrillo's pay coincided with Hurricane Ida. When Carrillo told Farrae that Crescent had not increased his pay to $90,000/year at the one-year mark, Farrae addressed the matter and ensured that Carrillo was paid retroactive to the date of the increase. Farrae 40:20-41:21.
[12] Carrillo at 45:5-46:2 and Ex. 2; Offner Decl. at ¶5.

**b. Carrillo requested a raise in 2022, which led to the parties entering into a Compensation Agreement.**

Carrillo's work for Crescent related to establishing a division to provide HR Advisory services.[13] The division came to be called "EmpactHR."[14]

In 2022, Carrillo requested a pay raise from $90,000/year to $120,000/year and to change his job title.[15] The request triggered negotiations between Carrillo, Offner, and Farrae that culminated in execution of a Compensation Agreement in November 2022.[16] Instead of increasing Carrillo's salary to $120,000/year, the parties agreed to a smaller increase in his base salary and the opportunity for him to share in the profits generated by the EmpactHR division.[17] The Compensation Agreement did not change the at-will nature of Carrillo's employment.[18]

Carrillo, who held a Master's degree in Business Administration from Tulane, drafted the Compensation Agreement.[19] Paragraph 1 stated that Crescent would increase Carrillo's pay to $100,000/year.[20] Paragraph 2 required Crescent to pay Carrillo a one-time $5,000 bonus.[21] Paragraphs 3 and 4 required Crescent to pay Carrillo 10% of EmpactHR's profits and 10% of RPO gross revenues quarterly beginning January 1, 2023.[22] The acronym RPO stands for "recruiting process outsource" and was related to payments Crescent's client's made to Crescent for help recruiting talent for their businesses.[23] Paragraph 5 required Crescent to pay Carrillo 5% of the revenue share of EmpactHR of the trailing twelve months at the given multiple of

[13] Carrillo 29:24-30:5.
[14] Carrillo 61:15-17.
[15] Carrillo 62:15-63:10; Offner 30:12-31:6; 32:14-19; and Ex. 2; Farrae 49:15-50:5; Offner Int. at Resp. to Int. No. 4.
[16] Carrillo 65:1-3 and Ex. 6; Farrae Int. at Resp. to Int. No. 4.
[17] Offner 31:23-32:2 and Ex. 2.
[18] Carrillo 74:12-18.
[19] Carrillo 20:7-19, 55:14-20
[20] Carrillo 65:4-9; 66:4-6; 67:7-11; and Ex. 6.
[21] Carrillo at Ex. 6.
[22] Carrillo 76:12-77:3; 83:25-84:21.
[23] Carrillo 83:25-84:11.

evaluation in the event of a divestiture or recapitalization.[24] And Paragraph 6 required Crescent to change Carrillo's title to Director of HR.[25] Importantly, the agreement stated that "all forms of remuneration" described in Paragraphs 1, 3, 4, and 5 "end upon termination of employment" and that "[n]o claim on either extends past the final date of employment, and final payments for services rendered up to the date of termination."[26] Farrae insisted on inclusion of the foregoing language in the Compensation Agreement before he agreed to sign it.[27]

**c. Crescent made the bonus and profit-sharing payments pursuant to the Compensation Agreement.**

In his Complaint, Carrillo alleged that he "did not received *any* monies owed under the [Compensation Agreement] and that Defendants "failed to pay *any* of the bonuses or profits owed to [him] under the contract."[28] But in his deposition, Carrillo admitted that is not true.[29] Specifically, Carrillo admitted Crescent made the following profit and revenue-sharing payments to him pursuant to the Compensation Agreement: $3,282.59 for the first quarter of 2023,[30] $3,292.62 for the second quarter 2023,[31] $4,255.29 for the third quarter of 2023,[32] $6,436.31 for the fourth quarter of 2023,[33] $5,133.47 for the first quarter of 2024,[34] and $3,292.62 for the second quarter of 2024, for a total of $26,099.83 over the 18 months the Compensation

---

[24] Carrillo 87:6-13 and Ex. 6.
[25] Carrillo at Ex. 6.
[26] Carrillo 88:23-89:15 and Ex. 6.
[27] Carrillo 88:23-89:15 and Ex. 6.
[28] R. Doc. 13 at ¶¶60, 70 [emphasis added.]
[29] Carrillo 99:15-102:16.
[30] Carrillo at Ex. 10.
[31] Carrillo at Ex. 11.
[32] Carrillo at Ex. 12.
[33] Carrillo at Ex. 13.
[34] Carrillo at Ex. 14.

Agreement was in effect.[35] Crescent also paid Carrillo the $5,000 bonus required by Paragraph 2 of the Compensation Agreement.[36]

**d. In October 2023, Carrillo broke up with his partner and in April 2024, he moved to Houston to work on a fully remote basis, which did not work out.**

Carrillo broke up with his partner on October 8, 2023.[37] After that happened, he told Offner and Farrae that he wanted to leave New Orleans.[38]

Offner and Farrae were concerned about Carrillo's ability to manage the EmpactHR division and supervise his subordinates while working fully remotely.[39] For that reason, Offner suggested that Carrillo switch to a sales position, but Carrillo declined.[40]

Carrillo moved to Houston in April 2024.[41] Crescent allowed Carillo to continue working in his same role.[42] But after Carrillo moved to Houston, two employees he supervised, Alex Vial and Connor Boleware, complained to Jessica Johnson, Crescent's Director of Administration, and to Justin Farrae, that he was unavailable, distracted, and not attentive to his work.[43]

Johnson asked Vial and Boleware if they wanted to address the issue with Carrillo or have her do so.[44] They elected to speak with Carrillo about it themselves.[45] That did not solve

[35] Carrillo at Ex. 15 and 22 and 77:8-80:20, 114:18-116:4.
[36] Carrillo 66:7-16; 67:1-4 and Ex. 7.
[37] Carrillo 102:17-19.
[38] Carrillo 103:4-7; R. Doc. 13 at ¶51 (stating that after Carrillo's relationship ended he "wished to relocate to Houston.")
[39] Farrae 122:19-123:2; 163:23-164:11; Offner Int. at Resp. to Int. No. 13.
[40] Carrillo 103:15-21; 104:21-105:4; 105:20-106:12 and Ex. 19; Offner 55:13-57:7 and Ex. 5; Offner Int. at Resp. to Int. No. 18.
[41] Carrillo 112:20-22.
[42] Offner Int. at Resp. to Int. No. 16.
[43] Carrillo 118:3-11; Offner 45:4-21; 46:25-47:4; 59:7-63:21 and Ex. 7; Farrae 106:15-108:9; Farrae Int. at Resp. to Int. Nos. 6 and 14; Offner Int. at Resp. to Int. Nos. 6 and 18; R. Doc. 13 at ¶55 (identifying Johnson as Director of Administration).
[44] Offner 86:20-87:24; Carrillo 118:10-119:19.
[45] Offner 86:20-87:24; Carrillo 118:10-119:19.

the problem, though, and after that conversation, Vial and Boleware complained again about Carrillo's unavailability and lack of support.[46]

On June 13, 2024, Johnson and Offner met virtually with Carrillo and told him they were placing him on a 30-day Performance Improvement Plan ("PIP").[47] After the June 13, 2024 meeting, Johnson sent an email recapping the meeting.[48] When Farrae learned that Offner put Carrillo on a PIP instead of terminating Carrillo's employment, he was upset because he understood they had decided to terminate Carrillo's employment.[49] Based on Farrae's review of Carrillo's emails, he did not believe Carrillo was doing any, or much, work for the company.[50] Farrae also believed Carrillo's employment should have been terminated because he understood Carrillo told his subordinates that he would be "detaching from" the business, or words to that effect, and because Farrae had personally observed Carrillo's lack of engagement, which was hurting client retention and growth.[51]

After speaking with Farrae, Offner notified Carrillo that Crescent would be terminating his employment even though the 30-day PIP period had not expired.[52] The decision to terminate Carrillo's employment was based entirely on his job performance and had nothing to do with any future planned or anticipated sale of the business or reorganization.[53]

Carrillo's last day of employment with Crescent was June 24, 2024.[54]

---

[46] Carrillo 121:2-6, 124:21-125:1; Farrae 106:15-108:9.
[47] Carrillo 121:15-122:4 and Ex. 25; Offner Int. at Resp. to Int. No. 10.
[48] Carrillo 126:4-13 and Ex. 26.
[49] Farrae 84:14-1-7; 85:4-11; 100:2-101:12; 113:13-114:116:25; Farrae Int. at Resp. to Int. Nos. 14 and 16.
[50] Farrae 119:20-23; 120:9-13; 121:3-5; Offner Int. at Resp. to Int. No. 14.
[51] Farrae 86:10-90:5; 100:2-101:12.
[52] Offner Int. at Resp. to Int. 14; Carrillo 127:15-128:4; Farrae 117:11-20.
[53] Offner 71:7-73:3; 75:10-80:14; 83:19-85:5; Farrae Int. at Resp. to Int. Nos. 15 and 16; Offner Decl. at ¶4.
[54] Carrillo 130:14-25 and Ex. 27.

### e. In May 2025, Crescent reorganized and Farrae sold his interest in the company.

In May 2025, Crescent reorganized and dissolved and Crescent Payroll Solutions, LLC was formed.[55] In the transaction, Farrae sold his ownership in Crescent.[56] The transaction was not contemplated before Carrillo lost his job in June 2024 and no steps were taken to effectuate it before then.[57]

### f. Carrillo contends the Compensation Agreement gave him an ownership interest in Crescent and does not mean what it says.

In his deposition, Carrillo testified that he understands that Paragraphs 3, 4, and 5 of the Compensation Agreement gave him an ownership interest in Crescent.[58] Yet, Carrillo admits that while he worked for Crescent, he never saw a copy of the company's operating agreement or signed a copy of it.[59] Farrae and Offner deny that they ever gave Carrillo any ownership in Crescent and, consistent with the words in the Compensation Agreement, contend that all Carrillo ever received was his salary, a bonus, and the opportunity to share in certain profits and revenues while he worked for the company.[60]

In his deposition, Carrillo also testified that he believes he is owed a share of the profits of EmpactHR as a result of the May 2025 reorganization even though he lost his job 11 months before then because he contends the obligation in Paragraph 5 of the Compensation Agreement was supposed to survive the termination of his employment. Carrillo cannot deny that the asterisk associated with Paragraph 5 indicates no remuneration related to a divestiture or recapitalization of Crescent was owed to him after he lost his job. Instead, he claims "there

[55] Crescent Int. at Resp. to Int. Nos. 3 and 4.
[56] Farrae 7:22-25.
[57] Offner Decl. at ¶4.
[58] Carrillo 55: 21-24; 57:16-21; and Ex. 6.
[59] Carrillo 58:8-15.
[60] Farrae 137:9-19; 139:3-8; 140:10-141:6; 162:17-163:22.

should not be an asterisk" associated with Paragraph 5.[61] Notably, although Carrillo claims the obligation in Paragraph 5 of the Compensation Agreement should have survived the termination of his employment, he cannot say for how long that should have been the case.[62] Also, and inconsistently, he admits that the asterisks associated with Paragraphs 3 and 4 of the Compensation Agreement apply as written. That is, Carrillo admits he was not entitled to continue receiving a share of the profits from EmpactHR or RPO post-termination.[63]

## II. Carrillo's Claims

In his Complaint, Carrillo asserts that: (1) Defendants breached his Employment Agreement by terminating his employment and by failing to pay him bonuses and profits he earned under the Compensation Agreement,[64] (2) he changed his position to his detriment by entering into the Compensation Agreement based on representations by Offner and Farrae that doing so was an "investment,"[65] (3) Defendants abused their rights by terminating his employment to avoid paying him amounts owed under the Compensation Agreement,[66] (4) Offner and Farrae tortiously interfered with his contract with Crescent by causing Crescent to breach his Employment Agreement by terminating his employment in an attempt to avoid paying him amounts due to him under the Compensation Agreement, [67] and (5) the non-compete provision in his Employment Agreement is unenforceable.[68]

---

[61] Carrillo 93:8-94:15.
[62] Carrillo 93:20-94:24.
[63] Carrillo 91:10-92:2; 92:22-93:7.
[64] Rec. Doc. 13, First Am. Compl. at ¶¶65-75.
[65] Rec. Doc. 13, First Am. Compl. at ¶¶76-84.
[66] Rec. Doc. 13, First Am. Compl. at ¶¶85-98.
[67] Rec. Doc. 13, First Am. Compl. at ¶¶99-100.
[68] Rec. Doc. 13, First Am. Compl. at ¶¶101-112.

## III. Law and Argument

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[69] A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.[70] When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence.[71] But when—as in this case—"the non-moving bears the burden of proof at trial, the movant may merely point to an absence of evidence."[72] When the movant meets its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact for trial.[73]

### a. Carrillo cannot prove that Defendants breached his Employment Agreement or failed to pay him amounts owed under the Compensation Agreement.

The burden of proof in an action to recover damages for breach of contract is on the party claiming rights under the contract.[74] The essential elements of a breach of contract claim are (1) the obligor undertook an obligation to perform; (2) the obligor failed to perform the obligation; and, (3) the failure to perform resulted in damages to the obligee.[75] Where a party fails to prove any one of the foregoing elements, his claim fails and it should be dismissed on summary judgment.[76]

---

69 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).
70 *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).
71 *Celotex*, 477 U.S. at 323.
72 *Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994).
73 *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618.
74 *Talbert v. Affordable Rent-To-Own of Thibodaux, L.L.C.*, 2022-1126 (La. App. 1 Cir. 6/2/23), 370 So. 3d 1, 15 (citing *Gulf South Psychiatry, L.L.C. v. Greenbrier Hospital, L.L.C.*, 2020-0957 (La.App. 1 Cir. 4/16/21), 323 So.3d 880, 883).
75 *Talbert*, 370 So.3d at 15, citing La. Civ. Code art. 1994.
76 *Id*. at 15.

Carrillo's claim that Crescent breached the Employment Agreement by terminating his employment fails because he admits he was employed at-will and acknowledged that his "employment [could] be terminated at any time, with or without cause and with or without prior notice either by the Company or myself."[77] Likewise, Carrillo's claim that Crescent breached the Compensation Agreement by failing to make bonus and profit-sharing payments to him fails because that is demonstrably untrue. Contrary to what Carrillo alleged, Crescent undisputedly paid him the one-time $5,000 bonus due under the Compensation Agreement. Crescent also made profit-sharing payments each quarter after the Compensation Agreement went into effect. Crescent did not pay Carrillo any amount when it reorganized in May 2025, but Carrillo was not entitled to any such payment because the obligations in Paragraph 5 of the Compensation Agreement undisputedly terminated when he lost his job.[78]

**b. Carrillo cannot prove he changed his position to his detriment by entering the Compensation Agreement.**

"It is difficult to recover under the theory of detrimental reliance, because such a claim is not favored in Louisiana."[79] To succeed on his detrimental reliance claim, Carrillo must prove that: (1) Defendants made a representation by word or conduct; (2) he justifiably relied on that representation; and (3) he changed his position to his detriment as a result of that justifiable reliance.[80]

Carrillo claims Offner and Farrae represented that entering into the Compensation Agreement would be an investment and assured him that "the profit-sharing arrangement would

---

[77] Carrillo at Ex. 3.
[78] When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046.
[79] *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007).
[80] *Louisiana Off. of Risk Mgmt. v. Richard*, 2013-0890 (La. 10/15/13), 125 So. 3d 398.

provide him with a significant financial benefit based on the company's performance."[81] He claims he "suffer[ed] economic detriment when Defendants failed to provide the promised profit-sharing compensation."[82] But the facts undisputedly prove that he received a title change, a pay raise, a bonus, and the opportunity to earn a share of certain profits and revenues by entering into the Compensation Agreement. The record also proves he received those profit-sharing payments. Specifically, Carrillo received $26,099.83 in profit-sharing payments between January 1, 2023 and June 2024. Based on the undisputed facts, Carrillo simply cannot prove that the decision to enter into the Compensation Agreement was a change to his detriment.

**c. Carrillo cannot prove Defendants abused any right by terminating his employment.**

The abuse of right doctrine "is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights."[83] To prove that Defendants abused a legal right available to them, Carrillo must show that: (1) their predominant motive for exercising the right was to cause harm; (2) there was no serious or legitimate interest in the exercise of the right; (3) the exercise of the right violated moral rules, good faith, or elementary fairness; or (4) the right was exercised for a purpose other than that for which it was granted.[84]

In his Complaint, Carrillo claims Defendants abused their right to terminate his employment because they did so to "intentionally to deprive him of his earned profit-sharing compensation under the parties' compensation agreement."[85] Carrillo is wrong, as the record

[81] R. Doc. 13 at ¶77.
[82] R. Doc. 13 at ¶81.
[83] *Truschinger v. Pak*, 513 So. 2d 1151, 1154 (La. 1987).
[84] *Magner v. Deas*, 2023-0598 (La. App. 4 Cir. 3/27/24), 401 So. 3d 43, 49.
[85] R. Doc. 13 at ¶88.

shows. Defendants terminated Carrillo because he was not doing his job.[86] But even if Defendants had terminated Carrillo's employment because they wanted to stop paying him and sharing profits with him, they were within their rights to do so. They were not obliged to continue to employ Carrillo in perpetuity and there is no basis to find that they abused their right to part ways with him. There is no evidence whatsoever from which one could find that Defendants' predominant motive for terminating Carrillo's employment was to cause harm; that Defendants had no serious or legitimate interest in terminating Carrillo's employment; that terminating Carrillo's employment violated moral rules, good faith, or elementary fairness; or that Defendants exercised their right to terminate Carrillo's employment for any purpose other than that for which it was granted. Notably, although Carrillo asserted a claim against Defendants for abuse of rights, in his deposition, he admitted even he does not know what right Defendants abused.[87]

**d. Carrillo cannot prove Farrae or Offner tortiously interfered with his Employment Agreement.**

Louisiana courts recognize a very limited cause of action for tortious interference with contract.[88] Specifically, Louisiana courts have held that corporate officers have a duty to third parties who have contractual relationships with the corporations they serve not to intentionally cause the company to breach their contract.[89] To succeed on his tortious interference claim against Offner and Farrae, Carrillo must prove: (1) the existence of a contract between him and Crescent, (2) that Offner and Farrae knew of the contract, (3) that Offner and Farrae intentionally

---

[86] Carrillo 118:3-11; Offner 45:4-21; 46:25-47:4; 59:7-63:21 and Ex. 7; Farrae 106:15-108:9; Farrae Int. at Resp. to Int. Nos. 6 and 14; Offner Int. at Resp. to Int. Nos. 6 and 18.
[87] Carrillo 133:11-16.
[88] *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228 (La. 1989).
[89] *Taxicab Insurance Store, LLC v. American Service Ins. Co., Inc.*, 224 So.3d 451 (La. App. 4 Cir. 2017).

caused Crescent to breach the contract, (4) that Offner and Farrae did so without justification, and (5) that he suffered resulting damages.

Carrillo claims Offner and Farrae tortiously interfered with his employment contract with Crescent by "instigating and initiating [his] termination with Crescent in an attempt to avoid paying him the sums due under the [Compensation Agreement].[90] The Court should grant summary judgment dismissing this claim for two reasons. First, Crescent did not breach Carrillo's employment contract by terminating it. As Carrillo admits, he was employed at-will.[91] Thus, nothing prohibited Crescent from discharging him. Second, Carrillo cannot prove that Offner or Farrae lacked justification for causing Crescent to terminate his employment. The record establishes that they terminated Carrillo's employment because he was distracted and inattentive to his work after he broke up with his partner and was not committing the time Offner and Farrae expected to his job duties after he moved to Houston and was working on a fully remote basis.[92] Those are valid reasons to terminate an employee.

**e. There is no justiciable controversy regarding Carrillo's non-compete agreement.**

When considering a declaratory judgment action, a district court must determine whether the declaratory action is justiciable. To do so, it must determine if an "actual controversy" exists between the parties to the action.[93] The court should dismiss a case for lack of "ripeness" when

---

[90] Rec. Doc. 13, First Am. Compl. at ¶100.
[91] Carrillo 46:4-21 and Ex. 3.
[92] Carrillo 118:3-11; Offner 45:4-21; 46:25-47:4; 59:7-63:21 and Ex. 7; Farrae 106:15-108:9; Farrae Int. at Resp. to Int. Nos. 6 and 14; Offner Int. at Resp. to Int. Nos. 6 and 18.
[93] *Orix Credit All., Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir. 2000) (citing *Rowan Companies, Inc. v. Griffin,* 876 F.2d 26, 27–28 (5th Cir.1989)).

the case is abstract or hypothetical.[94] Louisiana law is in accord.[95]

The Court should decline to opine on the validity of Carrillo's non-compete agreement because there is no justiciable controversy. When Crescent answered Carrillo's Complaint, it confirmed:

> Upon information and belief, Carrillo has been living and working in Texas since before Crescent terminated his employment, which is outside the geographic scope of the Covenant not to Compete in Paragraph 6 of the Employment Agreement. In any event, Crescent has not sought to enforce and does not intend to seek to enforce the Covenant Not to Compete in Paragraph 6 of the Employment Agreement. It will stipulate to releasing Mr. Carrillo from any such obligation.[96]

Moreover, Carrillo admits that Crescent has not taken any steps to seek to enforce the non-compete agreement against him.[97] Finally, the Employment Agreement only purports to prohibit competition for up to two years after Crescent terminated Carrillo's employment and more than two years have elapsed since then.[98] Because there is only a hypothetical and abstract

---

[94] *New Orleans Public Service, Inc. v. Council of New Orleans,* 833 F.2d 583 (5th Cir.1987); see also *Markwardt v. United Rentals (N. Am.), Inc.,* No. SA-13-CA-627, 2014 WL 12540713, at *3 (W.D. Tex. Feb. 7, 2014) (finding the plaintiff's request for declaratory judgment relating to the enforceability of a non-compete agreement moot because the term expired by the time he filed suit; thus "there no longer exist[ed] a case or controversy with respect to the agreement.").

[95] Under Louisiana law, a declaratory judgment action is designed to provide a means for adjudication of rights and obligations in cases involving an actual controversy. *Chauvet v. City of Westwego*, 599 So.2d 294, 296 (La. 1992). The function of a declaratory judgment is to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. *ANR Pipelines Company v. Louisiana Tax Commission*, 01-2594, p. 9 (La. App. 1 Cir. 3/20/02), 815 So.2d 178, 185, *affirmed and remanded*, 02-1479 (La. 7/2/02), 851 So.2d 1145. But Louisiana law limits the availability of declaratory judgments by holding that "courts will only act in cases of a present, justiciable controversy and will not render merely advisory opinions." *Chauvin v. Wellcheck, Inc.*, 2005-1571 (La. App. 1 Cir. 6/9/06), 938 So. 2d 114, 116 (quoting *Church Point Wholesale Beverage Co., Inc. v. Tarver*, 614 So.2d 697, 701 (La. 1993). A justiciable controversy for purposes of declaratory judgment is one involving uncertain or disputed rights in "an immediate and genuine situation," and must be a "substantial and actual dispute" as to the legal relations of "parties who have real, adverse interests." *Chauvin*, 938 So. 2d at 116 (quoting *Prator v. Caddo Parish*, 04-0794, p. 6 (La. 12/1/04), 888 So.2d 812, 817). Courts should not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to such controversies. *Id*. citing *CITGO Petroleum Co. v. Louisiana Public Service Commission*, 04-0914, p. 12 (La. 3/2/05), 898 So.2d 291, 298. Where there is not an actual, immediate controversy between the parties for purposes of a declaratory judgment, litigants lack standing to seek a declaratory judgment. *Chauvin* at 118.

[96] R. Doc. 26 Answer to First Amended Compl at ¶102.

[97] Carrillo at 45:5-46:2 and Ex. 2; Offner Decl. at ¶5.

[98] Carrillo at Ex. 2.

reason for interpreting the enforceability of the non-compete provision in Carrillo's Employment Agreement, the Court should decline to do so.

**IV. Conclusion.**

For the foregoing reasons, the Court should dismiss all of Carrillo's claims against Defendants with prejudice.

Respectfully submitted:

**ADAMS AND REESE, LLP**

*/s/ Elizabeth A. Roussel*
**ELIZABETH A. ROUSSEL** (#27943)
**TAYLOR P. SMITH** (#41421)
Hancock Whitney Center
701 Poydras Street, Suite 4500
New Orleans, Louisiana, 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
Email: liz.roussel@arlaw.com
taylor.smith@arlaw.com
*Counsel for Defendants*