**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **PHILIP CARRILLO** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | |
| | * | **NO. 25-1787** |
| **CRESCENT PAYROLL SOLUTIONS, INC. ET AL.** | * | |
| | * | |
| | * | **SECTION: "R" (3)** |

*** * * * * * * * * * * * * * * * * * * * * * * * * * * * ***

**STATEMENT OF UNCONTESTED MATERIAL**
**<u>FACTS SUPPORTING MOTION FOR SUMMARY JUDGMENT</u>**

Defendants, Crescent Payroll Solutions, LLC f/k/a Crescent Payroll Solutions, Inc., Sanders Offner, and Justin Farrae, respectfully submit that the following facts are material to its motion for summary judgment and are not genuinely disputes:

1. In August 2020, Philip Carrillo was living in New Orleans, having moved to the city to live with his then-partner.[1]
2. At that time, Crescent Payroll Solutions, Inc. ("Crescent") was looking to grow a new division around outsourced Human Resources.[2]
3. Sanders Offner saw Carrillo's resume on LinkedIn and reached out to him to discuss the opportunity.[3]
4. Carrillo interviewed for the position and, soon after, Crescent offered him a job as an HR Advisor.[4]
5. Carrillo understood and acknowledged that he would be employed at-will.[5]

---

[1] Carrillo 22:19-21.
[2] Offner 17:19-24; Carrillo 28:12-20.
[3] Offner 15:13-23; Offner Int. at Resp. to Int. No. 2.
[4] Carrillo 27:7-15, 28:12-20, at Ex. 2; Farrae 28:5-18; Offner 15:13-23, 18:21-19:8; Farrae Int. at Resp. to Int. No. 2.
[5] Carrillo 46:4-21 and Ex. 3.

6. At the time Crescent hired Carrillo, Offner was the President of the company and Justin Farrae was a Vice President and Offner and Farrae were two of the four owners of the company.[6]

7. Offner was chiefly responsible for sales and Farrae was chiefly responsible for finance and operations.[7]

8. Carrillo signed an Employment Agreement dated August 4, 2020.[8]

9. Carrillo understood he was expected to work 40 hours/week, in-office.[9]

10. The Employment Agreement provided that Carrillo's starting salary would be $60,000/year, would increase to $75,000/year after six months, and would increase to $90,000/year after a year upon Carrillo's successful attainment of agreed upon goals.[10]

11. Carrillo received the pay increases referenced in Paragraph 10 above, though the increase to $90,000 did not take effect in Carrillo's first paycheck after the one-year mark in August 2021, so Crescent had to make that adjustment retroactively.[11]

12. Carrillo's Employment Agreement contained a non-compete agreement, which Crescent has never sought to enforce.[12]

13. Carrillo's work for Crescent related to establishing a division to provide HR Advisory services.[13]

14. The division Carrillo led came to be called "EmpactHR."[14]

---

[6] Farrae 10:16-18; 17:11-14; 20:22-24; Farrae Int. at Resp. to Int. No. 1; Offner Int. at Resp. to Int. No. 1.
[7] Offner Int. at Resp. to Int. No. 1; Farrae 10:23-11:2, 11:12-12:3.
[8] Carrillo at Ex. 2.
[9] Carrillo 31:25-32:5.
[10] Carrillo 34:7-23 and Ex. 2; Farrae 35:9-18.
[11] Farrae 40:20-41:21.
[12] Carrillo at 45:5-46:2 and Ex. 2; Offner Decl. at ¶5.
[13] Carrillo 29:24-30:5.
[14] Carrillo 61:15-17.

15. In 2022, Carrillo requested a pay raise from $90,000/year to $120,000/year and to change his job title.[15]

16. The request triggered negotiations between Carrillo, Offner, and Farrae that culminated in execution of a Compensation Agreement in November 2022.[16]

17. Instead of increasing Carrillo's salary to $120,000/year, the parties agreed to a smaller increase in his base salary and the opportunity for him to share in the profits generated by the EmpactHR division.[17]

18. The Compensation Agreement did not change the at-will nature of Carrillo's employment.[18]

19. Carrillo, who held a Master's degree in Business Administration from Tulane, drafted the Compensation Agreement.[19]

20. Paragraph 1 of the Compensation Agreement stated that Crescent would increase Carrillo's pay to $100,000/year.[20]

21. Paragraph 2 of the Compensation Agreement required Crescent to pay Carrillo a one-time $5,000 bonus.[21]

22. Paragraphs 3 and 4 of the Compensation Agreement required Crescent to pay Carrillo 10% of EmpactHR's profits and 10% of RPO gross revenues quarterly beginning January 1, 2023.[22]

---

[15] Carrillo 62:15-63:10; Offner 30:12-31:6; 32:14-19; and Ex. 2; Farrae 49:15-50:5; Offner Int. at Resp. to Int. No. 4.
[16] Carrillo 65:1-3 and Ex. 6; Farrae Int. at Resp. to Int. No. 4.
[17] Offner 31:23-32:2 and Ex. 2.
[18] Carrillo 74:12-18.
[19] Carrillo 20:7-19, 55:14-20
[20] Carrillo 65:4-9; 66:4-6; 67:7-11; and Ex. 6.
[21] Carrillo at Ex. 6.
[22] Carrillo 76:12-77:3; 83:25-84:21.

23. The acronym RPO stands for "recruiting process outsource" and was related to payments Crescent's client's made to Crescent for help recruiting talent for their businesses.[23]

24. Paragraph 5 of the Compensation Agreement required Crescent to pay Carrillo 5% of the revenue share of EmpactHR of the trailing twelve months at the given multiple of evaluation in the event of a divestiture or recapitalization.[24]

25. Paragraph 6 of the Compensation Agreement required Crescent to change Carrillo's title to Director of HR.[25]

26. The Compensation Agreement stated that "all forms of remuneration" described in Paragraphs 1, 3, 4, and 5 "end upon termination of employment" and that "[n]o claim on either extends past the final date of employment, and final payments for services rendered up to the date of termination."[26]

27. Farrae insisted on inclusion of the foregoing language in the Compensation Agreement before he agreed to sign it.[27]

28. In his Complaint, Carrillo alleged that he "did not received *any* monies owed under the [Compensation Agreement] and that Defendants "failed to pay *any* of the bonuses or profits owed to [him] under the contract."[28]

29. But in his deposition, Carrillo admitted that is not true.[29]

30. As Carrillo admits, Crescent made the following profit and revenue-sharing payments to him pursuant to the Compensation Agreement: $3,282.59 for the first quarter of 2023,[30]

---

[23] Carrillo 83:25-84:11.
[24] Carrillo 87:6-13 and Ex. 6.
[25] Carrillo at Ex. 6.
[26] Carrillo 88:23-89:15 and Ex. 6.
[27] Carrillo 88:23-89:15 and Ex. 6.
[28] R. Doc. 13 at ¶¶60, 70 [emphasis added.]
[29] Carrillo 99:15-102:16.
[30] Carrillo at Ex. 10.

$3,292.62 for the second quarter 2023,[31] $4,255.29 for the third quarter of 2023,[32] $6,436.31 for the fourth quarter of 2023,[33] $5,133.47 for the first quarter of 2024,[34] and $3,292.62 for the second quarter of 2024, for a total of $26,099.83 over the 18 months the Compensation Agreement was in effect.[35]

31. Crescent also paid Carrillo the $5,000 bonus required by Paragraph 2 of the Compensation Agreement.[36]
32. Carrillo broke up with his partner on October 8, 2023.[37]
33. After that happened, he told Offner and Farrae that he wanted to leave New Orleans.[38]
34. Offner and Farrae were concerned about Carrillo's ability to manage the EmpactHR division and supervise his subordinates while working fully remotely.[39]
35. Offner suggested that Carrillo switch to a sales position, but Carrillo declined.[40]
36. Carrillo moved to Houston in April 2024.[41]
37. Crescent allowed Carillo to continue working in his same role after he moved to Houston.[42]

---

31 Carrillo at Ex. 11.
32 Carrillo at Ex. 12.
33 Carrillo at Ex. 13.
34 Carrillo at Ex. 14.
35 Carrillo at Ex. 15 and 22 and 77:8-80:20, 114:18-116:4.
36 Carrillo 66:7-16; 67:1-4 and Ex. 7.
37 Carrillo 102:17-19.
38 Carrillo 103:4-7; R. Doc. 13 at ¶51.
39 Farrae 122:19-123:2; 163:23-164:11; Offner Int. at Resp. to Int. No. 13.
40 Carrillo 103:15-21; 104:21-105:4; 105:20-106:12 and Ex. 19; Offner 55:13-57:7 and Ex. 5; Offner Int. at Resp. to Int. No. 18.
41 Carrillo 112:20-22.
42 Offner Int. at Resp. to Int. No. 16.

38. But after Carrillo moved to Houston, two employees he supervised, Alex Vial and Connor Boleware, complained to Jessica Johnson, Crescent's Director of Administration, and to Justin Farrae, that he was unavailable, distracted, and not attentive to his work.[43]

39. Johnson asked Vial and Boleware if they wanted to address the issue with Carrillo or have her do so.[44]

40. Vial and Boleware elected to speak with Carrillo about their concerns themselves.[45]

41. That did not solve the problem, though, and after that conversation, Vial and Boleware complained again about Carrillo's unavailability and lack of support.[46]

42. On June 13, 2024, Johnson and Offner met virtually with Carrillo and told him they were placing him on a 30-day Performance Improvement Plan ("PIP").[47]

43. After the June 13, 2024 meeting, Johnson sent an email recapping the meeting.[48]

44. When Farrae learned that Offner put Carrillo on a PIP instead of terminating Carrillo's employment, he was upset because he understood they had decided to terminate Carrillo's employment.[49]

45. Based on Farrae's review of Carrillo's emails, he did not believe Carrillo was doing any, or much, work for the company.[50]

46. Farrae also believed Carrillo's employment should have been terminated because he understood Carrillo told his subordinates that he would be "detaching from" the business,

---

[43] Carrillo 118:3-11; Offner 45:4-21; 46:25-47:4; 59:7-63:21 and Ex. 7; Farrae 106:15-108:9; Farrae Int. at Resp. to Int. Nos. 6 and 14; Offner Int. at Resp. to Int. Nos. 6 and 18; R. Doc. 13 at ¶55.
[44] Offner 86:20-87:24; Carrillo 118:10-119:19.
[45] Offner 86:20-87:24; Carrillo 118:10-119:19.
[46] Carrillo 121:2-6, 124:21-125:1; Farrae 106:15-108:9.
[47] Carrillo 121:15-122:4 and Ex. 25; Offner Int. at Resp. to Int. No. 10.
[48] Carrillo 126:4-13 and Ex. 26.
[49] Farrae 84:14-1-7; 85:4-11; 100:2-101:12; 113:13-114:116:25; Farrae Int. at Resp. to Int. Nos. 14 and 16.
[50] Farrae 119:20-23; 120:9-13; 121:3-5; Offner Int. at Resp. to Int. No. 14.

or words to that effect, and because Farrae had personally observed Carrillo's lack of engagement, which was hurting client retention and growth.[51]

47. After speaking with Farrae, Offner notified Carrillo that Crescent would be terminating his employment even though the 30-day PIP period had not expired.[52]

48. The decision to terminate Carrillo's employment was based entirely on his job performance and had nothing to do with any future planned or anticipated sale of the business or reorganization.[53]

49. Carrillo's last day of employment with Crescent was June 24, 2024.[54]

50. In May 2025, Crescent reorganized and dissolved and Crescent Payroll Solutions, LLC was formed.[55]

51. In the transaction, Farrae sold his ownership in Crescent.[56]

52. The transaction was not contemplated before Carrillo lost his job in June 2024 and no steps were taken to effectuate it before then.[57]

53. In his deposition, Carrillo testified that he understands that Paragraphs 3, 4, and 5 of the Compensation Agreement gave him an ownership interest in Crescent.[58]

54. While he worked for Crescent, Carrillo never saw a copy of the company's operating agreement or signed a copy of it.[59]

55. Farrae and Offner deny that they ever gave Carrillo any ownership in Crescent and contend that all Carrillo ever received was his salary, a bonus, and the opportunity to

---

[51] Farrae 86:10-90:5; 100:2-101:12.
[52] Offner Int. at Resp. to Int. 14; Carrillo 127:15-128:4; Farrae 117:11-20.
[53] Offner 71:7-73:3; 75:10-80:14; 83:19-85:5; Farrae Int. at Resp. to Int. Nos. 15 and 16; Offner Decl. at ¶4.
[54] Carrillo 130:14-25 and Ex. 27.
[55] Crescent Int. at Resp. to Int. Nos. 3 and 4.
[56] Farrae 7:22-25.
[57] Offner Decl. at ¶4.
[58] Carrillo 55: 21-24; 57:16-21; and Ex. 6.
[59] Carrillo 58:8-15.

share in certain profits and revenues while he worked for the company.[60]

56. In his deposition, Carrillo also testified that he believes he is owed a share of the profits of EmpactHR as a result of the May 2025 reorganization even though he lost his job 11 months before then because he contends the obligation in Paragraph 5 of the Compensation Agreement was supposed to survive the termination of his employment. Carrillo cannot deny that the asterisk associated with Paragraph 5 indicates no remuneration related to a divestiture or recapitalization of Crescent was owed to him after he lost his job.

57. Carrillo claims "there should not be an asterisk" associated with Paragraph 5 of the Compensation Agreement.[61]

58. Although Carrillo claims the obligation in Paragraph 5 of the Compensation Agreement should have survived the termination of his employment, he cannot say for how long that should have been the case.[62]

59. Carrillot admits that the asterisks associated with Paragraphs 3 and 4 of the Compensation Agreement apply as written. That is, Carrillo admits he was not entitled to continue receiving a share of the profits from EmpactHR or RPO post-termination.[63]

---

[60] Farrae 137:9-19; 139:3-8; 140:10-141:6; 162:17-163:22.
[61] Carrillo 93:8-94:15.
[62] Carrillo 93:20-94:24.
[63] Carrillo 91:10-92:2; 92:22-93:7.

Respectfully submitted:

**ADAMS AND REESE, LLP**

*/s/ Elizabeth A. Roussel*
**ELIZABETH A. ROUSSEL** (#27943)
**TAYLOR P. SMITH** (#41421)
Hancock Whitney Center
701 Poydras Street, Suite 4500
New Orleans, Louisiana, 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
Email: liz.roussel@arlaw.com
taylor.smith@arlaw.com
*Counsel for Defendants*